JOHN FRANTZ

*v.*

EDWIN R. ROSE.

1. TENDER—*of amount due on contract, and costs in suit before justice of the peace.* In an action before a justice of the peace to recover unliquidated damages for the breach of a contract, express or implied, the defendant has the

right, under sec. 51, ch. 79, Rev..Stat. 1874, to make a tender of the sum due, and costs that have accrued, and if not accepted, deposit the same with the justice, at or before the trial, in bar of any costs subsequently made.

2. The object of the law, as it now exists, in relation to tender is, to provide for a tender in all cases of either tort or contract, where a pecuniary compensation is sought to be recovered, and thereby discourage and prevent unnecessary and vexatious litigation, and such object should not be defeated by any narrow and constrained construction of the several enactments.

3. FORMER DECISIONS. Since the cases of *Cilley* v. *Hawkins,* 48 Ill. 308, and *Gregory* v. *Wells,* 62 id. 232, holding a different rule, the statute has been changed, as above indicated.

4. CONTRACT—*right to pasture under contract.* Where a party, in the early part of the fall, contracts for the privilege of grazing his cattle upon the blue grass pasture of another, and no time is specified for the occupancy of the pasture, or when to take the cattle out, and the owner of the cattle puts them on the pasture in October, and about the first of December takes them out, for the accommodation of the owner of the pasture, for a few days, so that they may not break into his corn field before the corn is gathered, this will not deprive the owner of the cattle of the right to turn them in again, especially where there is no evidence that the pasture had been grazed as closely as is customary at that season of the year.

5. INSTRUCTION—*not supported by evidence, and assuming facts.* It is error to give an instruction denying a party's right, upon an assumed state of facts not shown by the evidence, and calculated to give the jury to understand that, as a matter of law, the party under the contract was bound in a certain way not shown by the evidence.

6. NEW TRIAL—*misdirection to the jury.* If an objectionable instruction is given, and its natural effect is to mislead the jury, and it appears probably to have done so, the verdict so induced will be set aside.

APPEAL from the Circuit Court of Warren county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Mr. JAMES W. DAVIDSON, for the appellant.

Mr. J. M. KIRKPATRICK, for the appellee

Mr. JUSTICE BAKER delivered the opinion of the Court:

This action was commenced before a justice of the peace to recover damages for the breach of a contract. The case was afterwards appealed to the circuit court, where it was tried *de novo* before the judge and a jury.

In September, 1875, appellant bought of appellee pastures, consisting of about forty acres of corn stalks and some twenty acres of blue grass, for which he paid $70 in cash. Appellant took possession of the blue grass some time in October, and pastured cattle thereon until about the first of December. He then took them off the blue grass, and on the 5th of January put them back there, when they were turned out by appellee and driven back home. At that time, the corn was not all gathered out of the stalk field, and was not all got out until after January 15th, at which latter date this suit was instituted. Appellee claims to have tendered appellant, before suit brought, $35, in full of all damages, and to have kept his tender good. The right to make, and the sufficiency of, the alleged tender are two of the questions involved in this controversy.

It is insisted, this being an action to recover unliquidated damages for the breach of a contract, no tender, either at common law or under the statute, could be made available, and the cases of *Cilley* v. *Hawkins*, 48 Ill. 308, and *Gregory* v. *Wells*, 62 id. 232, are cited as authorities to support that proposition. Those decisions were made when the sections now found in the Revised Statutes of 1874 as sections 3 and 7 of chapter 135 were the only statutory provisions bearing upon the subject. Since then, there has been a statutory enactment under which appellee could well have made a tender.

Section 51 of chapter 79, Rev. Stat. 1874, provides, if the defendant in any suit on a contract, express or implied, before a justice, will deposit with the justice the amount actually due the plaintiff, with all costs that shall have accrued at the time, or will pay or tender the same to the plaintiff or his agent or attorney, and in case the same is not accepted, deposit the money with the justice at or before the time of trial, all costs that shall accrue thereafter shall be adjudged against the plaintiff. The case at bar is expressly within the language of the statute, it being a suit on a contract commenced before a justice, and we could only hold the statute does not

apply to it by doing violence to both the language and plain intention of the enactment. The use of the expression, "the amount actually due," does not militate against this interpretation. In all cases of tender a plaintiff is bound to know, at his peril, the amount he is entitled to. It is surely no greater hardship that he is required to have this knowledge, in a case of unliquidated damages on a contract, than it is such knowledge is required in an action for unliquidated damages for a tort, (sec. 6, chap. 135.) Of the two, the former is much the more readily and certainly ascertainable; and in all cases which do not rest in mere computation, "the amount actually due" can only be definitely determined by the verdict of a jury or finding of a court. Again, in such matter, a defendant, equally with the plaintiff, acts at his peril, and there is an equality of responsibility resting upon them.

The evident object of the legislature was, by this section, and the several sections to be found in the act revising the law in relation to tender, to provide for a tender in all cases of either tort or contract, where a pecuniary compensation is sought to be recovered, and thereby to discourage and prevent unnecessary and vexatious litigation. This beneficent intention should not be defeated by any narrow and constrained construction of the language of the several enactments.

Without stopping to discuss the numerous objections made to the proof of a tender, suffice it to say that, tested by the rules laid down in former decisions, we regard it as sufficient to justify the verdict of the jury in that regard.

Nor do we deem it necessary to enter into any discussion of the testimony in reference to the value of the two pastures and the amount of the damages sustained by appellant. The evidence on these points was very conflicting—they were essentially questions of fact to be determined by a jury, and two juries having passed upon the matter of these damages, we would not feel at all inclined to disturb the verdict on the evidence as found in the record.

There is, however, one point made which seems to compel a reversal of the judgment and remanding of the cause for a new trial. The court, on motion of appellee, instructed the jury as follows:

"If the jury believe, from the evidence in this case, that the defendant sold to the plaintiff the privilege to graze the blue grass pasture of which witnesses have testified about in this case, during the fall and early part of the winter A. D. 1875, and that the plaintiff did graze off the said blue grass as closely as is customary to graze such pasture at that season of the year, and took his stock off of said pasture, then the jury are instructed that the plaintiff had no right to turn stock on the same again, and he can not recover, in this case, any damages because the defendant refused to let him put his stock again into said pasture."

Instructions should be based on the evidence. There is no evidence whatever showing or even tending to show the grass was sold to be grazed in the fall and early part of the winter. On the contrary, appellee himself testified, "I don't think there was any time specified that he should occupy the blue grass pasture; he was to pasture the blue grass till he was done with it,—there was no contract as to when he should take his cattle out." Nor was there any testimony said pasture was grazed as closely as was customary at that season of the year. And again, appellant testified that when he took the cattle off the pasture he did so at the request of appellee, and for his accommodation, and only for a few days, so they would not break into the corn field until appellee could finish gathering his corn.

The first part of the instruction may well have been regarded by the jury as an intimation from the court that, under the contract made, appellant was bound, as a matter of law, to pasture the blue grass only during the fall and early part of the winter.

The evidence shows appellant wanted to pasture the grass.

in January, after the early part of the winter had passed. It may be he only temporarily took his cattle off the grass about the first of December, for the sole accommodation of appellee himself, and with the understanding they should be put back in a few days. All this is sworn to by appellant, and it may have been believed by the jury.

There were two subject matters of controversy in this suit —damages for the stalk pasture, and damages for the grass pasture. It is altogether probable, from the evidence, that the whole of the $35 tendered was allowed by the jury as damages on account of the stalk field, and that the jury, influenced solely by this instruction, allowed nothing whatever for the grass. We can not, after a careful examination of all the testimony, say this instruction did not mislead, and that the verdict would have been the same, even if it had not been given. If an objectionable instruction is given, and the natural effect would be to mislead the jury, the verdict will be set aside. *Carter* v. *Carter*, 62 Ill. 439 ; *Herrick* v. *Gary*, 65 id. 102.

It is with regret we arrive at the conclusion this tedious and expensive litigation between two brothers-in-law, about so trifling a difference, must be further protracted.

As the matter stands, the judgment, for the error indicated, is reversed, and the cause remanded for a new trial.

The additional abstract, filed by appellee, was to supply portions of the record omitted in the first abstract. It is immaterial, as the judgment is reversed, in which abstract the additional matter was printed. In either event, the printer's fee is to be taxed against the unsuccessful party. Appellee's motion, reserved until the hearing, to tax costs of additional abstract against appellant, is therefore overruled.

*Judgment reversed.*